No. 22-10967

# In the United States Court of Appeals for the Eleventh Circuit

MARYBETH LUKIE,
*Plaintiff-Appellant,*

v.

METLIFE GROUP, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middle District of Florida, Tampa Division
Case No. 8:20-cv-943, Hon. Thomas P. Barber

## REPLY BRIEF OF MARYBETH LUKIE

Kathryn C. Hopkinson
CURRAN ANTONELLI LLP
400 North Tampa Street, 15th floor
Tampa, FL 33602
(508) 274-9169
khopkinson@curranantonelli.com

*Trial counsel for MaryBeth Lukie*

Thomas A. Burns
Shannon C. Reese
BURNS, P.A.
301 West Platt Street, Suite 137
Tampa, FL 33606
(813) 642-6350
tburns@burnslawpa.com
sreese@burnslawpa.com

*Appellate counsel for MaryBeth Lukie*

*Lukie v. MetLife Group Inc.*, No. 22-10967

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rules 26.1-1 and 26.1-3, the following is an alphabetical list of the trial judges, attorneys, persons, and firms with any known interest in the outcome of this case.

1.   Barber, Hon. Thomas P. – United States District Judge;

2.   Burns, Thomas A. (of Burns, P.A.) – Appellate counsel for Plaintiff-Appellant;

3.   Field, Carol Ann (of Morgan, Lewis & Bockius, LLP) – Trial counsel for Defendant-Appellee;

4.   Hale, Ashley J. (of Morgan, Lewis & Bockius, LLP) – Trial counsel for Defendant-Appellee;

5.   Holden, West Allen (of Littler Mendelson, P.C.) – Former trial counsel for Defendant-Appellee;

6.   Hopkinson, Kathryn Comly (of Curran Antonelli LLP) – Trial counsel for Plaintiff-Appellant;

7.   Lukie, MaryBeth – Plaintiff-Appellant;

8.   Magrisso, Joseph (of Morgan, Lewis & Bockius, LLP) – Appellate counsel for Defendant-Appellee;

9.   McCrea, Rich (of Greenberg Traurig, P.A.) – Former trial counsel for Defendant-Appellee;

10.  MetLife Group, Inc. – Defendant-Appellee;

11.  MetLife, Inc. (NYSE: MET) – Parent corporation of Defendant-Appellee;

12.  Parlo, Christopher A. (of Morgan, Lewis & Bockius, LLP) – Trial counsel for Defendant-Appellee;

*Lukie v. MetLife Group Inc.*, No. 22-10967

13.   Reese, Shannon C. (of Burns, P.A. in Tampa, Florida) – Appellate counsel for Plaintiff-Appellant;

14.   Sansone, Hon. Amanda Arnold – United States Magistrate Judge;

15.   Thompson, James Moten (of Thompson Legal Center, LLC) – Trial counsel for Plaintiff-Appellant.

MetLife Group, Inc., is a corporation organized under the laws of New York and with its principal place of business in New York. It's a wholly owned subsidiary of MetLife, Inc. (NYSE: MET).

January 13, 2023                     /s/ Thomas Burns
                                     Thomas A. Burns

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

CERTIFICATE OF INTERESTED PERSONS ....................................C-1

ARGUMENT AND CITATIONS OF AUTHORITY ..................................1

I.   The district court erred when it rejected Lukie's disparate-pay and sexist-division-of-labor claims (count one) ...............................3

    A.   With respect to disparate pay, Lukie's comparators were similarly situated in all material respects .............................4

        1.   MetLife misconceives how the summary judgment standard works ................................................................5

        2.   MetLife misunderstands the context in which *Lewis* arose ...................................................................8

        3.   MetLife misdescribes Lukie's disparate-pay argument and overlooks her supporting evidence .............12

        4.   Lukie's affidavit wasn't conclusory or a sham ............14

        5.   The pretext issue should either be remanded to the district court to assess in the first instance, or Lukie has demonstrated factual disputes about it ......16

    B.   With respect to sexist division of labor, MetLife's repeated assignments of feminized secretarial and administrative tasks to Lukie, unlike her male colleagues, were materially adverse employment actions......................17

II.  The district court erred when it rejected Lukie's retaliation claim (count three) .........................................................................23

i

A.  Alternative bases for affirmance regarding Lukie's protected activities and MetLife's materially adverse employment actions should either be remanded to the district court or rejected altogether ............................................ 24

B.  There were genuine disputes of material fact regarding causation .................................................................................. 26

C.  There were genuine disputes of material fact regarding pretext and constructive discharge ........................................ 28

CONCLUSION ................................................................................ 28

CERTIFICATE OF COMPLIANCE ............................................... 29

CERTIFICATE OF SERVICE ........................................................ 30

# TABLE OF CITATIONS

**Cases**                                                                    **Page(s)**

*Allen v. Bd. of Public Educ. for Bibb County,*
    495 F.3d 1306 (11th Cir. 2007) ............................................................15

*Am. Elec. Power Co., Inc. v. Conn.,*
    564 U.S. 410 (2011) ...........................................................................2

*Bass v. Bd. of County Comm'rs, Orange County, Fla.,*
    256 F.3d 1095 (11th Cir. 2001) ..............................................................7

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir. 1981) (*en banc*) ..............................................18

*Brown v. Ala. Dep't of Transp.,*
    597 F.3d 1160 (11th Cir. 2010) ..............................................................6

*\*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006) ............................................................18, 19, 20, 26

*Chapman v. AI Transp.,*
    229 F.3d 1012 (11th Cir. 2000) (*en banc*) ..............................................5

*Chavez v. Sec'y, Fla. Dep't of Corr.,*
    647 F.3d 1057 (11th Cir. 2011) ............................................................12

*Commodores Entm't Corp. v. McClary,*
    879 F.3d 1114 (11th Cir. 2018) ..............................................................6

*County of Washington v. Gunther,*
    452 U.S. 161 (1981) ..........................................................................14

*\*Cox v. Am. Cast Iron Pipe Co.,*
    784 F.2d 1546 (11th Cir. 1986) ......................................................18, 19

*Crawford v. Carroll,*
    529 F.3d 961 (11th Cir. 2008) ...............................................................7

iii

*Davis v. Town of Lake Park, Fla.,
  245 F.3d 1232 (11th Cir. 2001) ......................................................17, 18

Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr.
  Trades Council,
  485 U.S. 568 (1988) ..............................................................................6

Gant v. Hartman,
  924 F.3d 445 (7th Cir. 2019) ................................................................22

Gillis v. Ga. Dep't of Corr.,
  400 F.3d 883 (11th Cir. 2005) ...............................................................7

Hamilton v. Southland Christian Sch., Inc.,
  680 F.3d 1316 (11th Cir. 2012) .............................................................4

*Hinson v. Clinch County, Ga. Bd. of Educ.,
  231 F.3d 821 (11th Cir. 2000) .........................................................7, 17

Hulsey v. Pride Restaurants, LLC,
  367 F.3d 1238 (11th Cir. 2004) ...........................................................16

In re Prudential of Fla. Leasing, Inc.,
  478 F.3d 1291 (11th Cir. 2007) ...........................................................16

*Jefferson v. Sewon Am., Inc.,
  891 F.3d 911 (11th Cir. 2018) ................................................5, 6, 7, 18

Jones v. Gulf Coast Health Care of Delaware, LLC,
  854 F.3d 1261 (11th Cir. 2017) .............................................................7

La Grasta v. First Union Sec., Inc.,
  358 F.3d 840 (11th Cir. 2004) ...............................................................4

*Lewis v. City of Union City,
  918 F.3d 1213 (11th Cir. 2019) (en banc) .............4, 8, 9, 10, 11, 12, 14

Martin v. Singletary,
  965 F.2d 944 (11th Cir. 1992) ...............................................................2

*Miranda v. B&B Cash Grocery Store, Inc.*,
  975 F.2d 1518 (11th Cir. 1992) ................................................6, 13, 14

*Morton v. Kirkwood*,
  707 F.3d 1276 (11th Cir. 2013). ........................................................22

*Mulhall v. Advance Sec., Inc.*,
  19 F.3d 586 (11th Cir. 1994) ...............................................................7

*Reeves v. Sanderson Plumbing Prod., Inc.*,
  530 U.S. 133 (2000) .............................................................................7

*Rollins v. TechSouth*,
  833 F.2d 1525 (11th Cir. 1987) .........................................................15

*Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*,
  689 F.2d 982 (11th Cir. 1982) ............................................................16

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) ............................................................14

*Scott v. Harris*,
  550 U.S. 372 (2007) ...........................................................................22

*SEC v. Big Apple Consulting USA, Inc.*,
  783 F.3d 786 (11th Cir. 2015) ............................................................14

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*,
  710 F.2d 678 (11th Cir. 1983) ..............................................................2

*Smith v. Fletcher*,
  559 F.2d 1014 (5th Cir. 1977) ......................................................18, 19

*Tallahassee Mem'l Reg'l Med. Center v. Bowen*,
  815 F.2d 1435 (11th Cir. 1987) ..........................................................14

*Tippens v. Celotex Corp.*,
  805 F.2d 949 (11th Cir. 1986) ............................................................15

*Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*,
   480 F.3d 1254 (11th Cir. 2007) ............................................................2

*United States v. Irey*,
   612 F.3d 1160 (11th Cir. 2010) (*en banc*) ..........................................8

*Wideman v. Wal-Mart Stores, Inc.*,
   141 F.3d 1453 (11th Cir. 1998) ......................................................7, 19

*Wilson v. B/E Aerospace, Inc.*,
   376 F.3d 1079 (11th Cir. 2004) ............................................................5

*Witt v. W. Va. State Police, Troop 2*,
   633 F.3d 272 (4th Cir. 2011) .............................................................22

**Statutes**                                                      **Page(s)**

29 U.S.C. § 206 ....................................................................................13

Fla. Stat. § 760.10 ..............................................................................25

**Rules**                                                          **Page(s)**

11th Cir. R. 28-1 ................................................................................12

11th Cir. R. 36, I.O.P. 7 .......................................................................2

Fed. R. Civ. P. 56 .................................................................................6

**Other authorities**                                              **Page(s)**

Bazelon, Lara,
   *What It Takes to Be a Trial Lawyer if You're Not a Man*,
   THE ATLANTIC, Sept. 2018,
   *at* https://tinyurl.com/2vz5rskz (visited Jan. 13, 2023) ......................21

Cert. Pet.,
   *Burlington N. & Santa Fe Ry. Co. v. White*,
   No. 05-259 (S. Ct.) (filed Aug. 24, 2005*),*
   *at* https://tinyurl.com/yy8f69dp (visited Jan. 13, 2023).....................19

COKE, SIR EDWARD,
   COMMENTARY ON LITTLETON (C. Butler *et al.*, eds. 1832) ....................6

Pet'r Br.,
   *Burlington N. & Santa Fe Ry. Co. v. White*,
   No. 05-259 (S. Ct.) (filed Jan. 26, 2006),
   *at* https://tinyurl.com/j9sykmn2 (visited Jan. 13, 2023)....................19

*The Big Bang Theory: The Status Quo Combustion*
   (CBS television broadcast May 15, 2014),
   *at* https://youtu.be/F_1zoX5Ax9U (visited Jan. 13, 2023) ............18, 19

## ARGUMENT AND CITATIONS OF AUTHORITY

Tilling the same soil as the district court, MetLife defends its summary judgment. It argues, as it must, that no reasonable factfinder could believe Lukie's comparators were similarly situated in all material respects. MetLife Br. 22–25. It argues, as it must, that no reasonable factfinder could believe Lukie's additional feminized administrative tasks were materially adverse employment actions. *Id.* at 26–31. It argues, as it must, that no reasonable factfinder could believe it retaliated against Lukie for complaining about its sexist division of labor by reassigning her prestigious MIM responsibilities to an inexperienced man while reassigning her to babysit a different man who had no professional credentials. *Id.* at 31–42. And breaking new ground, MetLife also asks this Court to affirm on alternative grounds never reached below. *Id.* at 25–26, 42–45.

But despite its toil, MetLife's arguments aren't persuasive.[1] Instead of *assessing* the evidence for genuine disputes of material fact, the district

---

[1] MetLife's brief is unusual because, even for boilerplate legal propositions, it rarely cites any binding precedent. *See* MetLife Br. 21–45. Instead, unlike Lukie's brief, it primarily cites this Court's unpublished decisions and various district court orders (some published, some not). *See id.* at iv–vii, 21–45 (citing approximately 30 nonbinding authorities).

But none of those citations are to binding precedent. Rather, in this Court, precedent regarding federal law is created only by the Supreme

court *weighed* it. In doing so, the district court lost sight of its limited role and substituted its judgment for that of a jury. That's an elementary mis-application of the summary judgment standard, and this Court should, as always, correct it. As to other issues never reached below, this Court should remand them for the district court to address in the first instance.

---

Court and this Court's *published* decisions, not by its unpublished decisions or any kind of district court orders.

For instance, it's hornbook law that only this Court's published opinions, not its unpublished ones, count as binding precedent. *E.g.*, *Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (published decision was binding precedent even though mandate had not yet issued). In contrast, although an unpublished opinion might be persuasive, it's "only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n.3 (11th Cir. 2007). And it's also hornbook law that district court orders, whether published or unpublished, never qualify as binding precedent; that's because "federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court." *Am. Elec. Power Co., Inc. v. Conn.*, 564 U.S. 410, 428 (2011). Indeed, even the decisions of state intermediate appellate courts aren't binding precedent regarding questions of state law in this Court whenever there is a "persuasive indication" that a state supreme court would decide the issue differently. *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983). That's why this Court "generally does not cite to its 'unpublished' opinions": "because they are not binding precedent." 11th Cir. R. 36, I.O.P. 7.

Thus, instead of engaging in an unhelpful whack-a-mole or wild-goose-chase exercise of distinguishing MetLife's repeated reliance on dozens of nonbinding authorities, this brief redirects attention to how this Court's *binding* precedent—from *published* decisions—applies to this record's facts and the reasonable inferences to be drawn in Lukie's favor.

## I.    The district court erred when it rejected Lukie's disparate-pay and sexist-division-of-labor claims (count one)

Using language that suggested it was *weighing* the evidence instead of merely *assessing* it for genuine disputes of material fact, the district court ruled Lukie failed to make a *prima facie* case for sex discrimination.[2] Lukie Br. 27–29. As to disparate pay, it ruled Semke, Kurpit, and Orr weren't proper comparators and that no convincing mosaic of circumstantial evidence indicated discrimination. *Id.* at 28. As to sexist division of labor, it ruled her excessive administrative assignments were merely ordinary workplace tribulations rather than sex discrimination or materially adverse employment actions. *Id.* at 29.

Lukie's brief already explained how these rulings were incorrect. *Id.* at 34–52. The disparate-pay ruling overlooked genuine disputes of material fact whether a reasonable juror could find she was similarly situated in all material respects to those comparators. *Id.* at 34–42. The sexist-division-of-labor ruling overlooked genuine disputes of material fact (1) whether her feminized administrative duties qualified as sex

---

[2] In rejecting Lukie's discrimination claims, the district court never reached *McDonnell Douglas*'s second step (an employer's burden to produce legitimate, nondiscriminatory reasons) or third step (whether those reasons were pretextual). *See* Doc. 40 at 4–10.

discrimination and adverse employment actions and (2) regarding her convincing mosaic theory of discrimination. *Id.* at 42–52.

### A. With respect to disparate pay, Lukie's comparators were similarly situated in all material respects

Defending its disparate pay, MetLife advances two primary arguments.[3] *See* MetLife Br. 22–26 & n.8. First, per *Lewis v. City of Union City*, 918 F.3d 1213, 1226 (11th Cir. 2019) (*en banc*), MetLife argues that "merely having the same corporate title and reporting to the same SVP" doesn't make another comparator "similarly situated in all material respects." MetLife Br. 24–25 (citing three unpublished decisions and two district court orders). Second, in a cursory footnote, MetLife argues the district court properly rejected Lukie's affidavit as conclusory and also could've rejected it under the sham affidavit doctrine. *Id.* at 22 n.8.

Neither argument is correct. As to its first argument, MetLife misconceives how the summary judgment standard works, misunderstands the scope of *Lewis*'s holding by overlooking the context in which it arose,

---

[3] On appeal, MetLife never responds to Lukie's convincing mosaic argument, so it has abandoned any defense of that aspect of the order on appeal. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012) (appellee's brief abandoned argument by omitting it); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 847 n.4 (11th Cir. 2004) (same).

and misdescribes Lukie's disparate pay argument while overlooking significant evidence supporting it. *See infra* Argument I.A.1–3. As to its second slapdash argument, if it's even cognizable here, Lukie's affidavit was neither conclusory nor a sham. *See infra* Argument I.A.4.

### 1. MetLife misconceives how the summary judgment standard works

For starters, like the district court, MetLife misconceives how the summary judgment standard works.

To be sure, Lukie isn't arguing that summary judgment is always unconstitutional or can't ever be used in the Title VII employment context. As this Court has correctly recognized, those kinds of "radical" arguments are "[n]onsense." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919–20 (11th Cir. 2018). Nor is Lukie arguing that there's a special exception or version of how summary judgment is applied in the Title VII employment context. *Id.* at 920 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004), and *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000) (*en banc*)). Rather, summary judgment "applies in job discrimination cases just as in other cases," and "[n]o thumb is to be placed on either side of the scale." *Chapman*, 229 F.3d at 1026.

Instead, Lukie is making a more limited—and frankly, indisputable—argument that *in any context* summary judgment can't be used so expansively that it "intrude[s] on the constitutional role of the jury." *Jefferson*, 891 F.3d at 920. It's this constitutional redline—that judges decide law whereas juries find facts,[4] and which is necessarily baked into Rule 56's machinery[5]—that forbids district courts from "'weigh[ing] the evidence'" or "'determin[ing] the truth of [a disputed] matter.'" *Id.* (citation omitted). To put it bluntly, at summary judgment, "'[c]redibility

---

[4] *E.g.*, *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (courts are "the only source of the law," and an expert's testimony is never allowed to "invade[] the court's exclusive prerogative"); SIR EDWARD COKE, COMMENTARY ON LITTLETON 155.b (C. Butler *et al.*, eds. 1832) ("matters in law[,] the judges ought to decide").

[5] Given Title VII's potpourri of legal and equitable remedies, claims under it aren't always entitled to be heard by a jury. *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010); *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). But it can't be the law that Rule 56 means one thing when applied to legal claims to be heard by a jury, yet means a different thing when applied to equitable claims to be heard by a judge. Either way, Rule 56's plain language remains identical. *See* Fed. R. Civ. P. 56 (setting forth one standard for assessing all claims, not one standard for legal claims and a different one for equitable claims). Thus, regardless whether a legal or equitable claim is at issue, the scope of Rule 56 should be read in harmony with the Seventh Amendment's guarantee of a trial by jury. *See Edward J. De-Bartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (statutes should be construed to avoid "serious constitutional problems").

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000).

And it's in this fashion that the district court lost sight of its limited role. Instead of sifting through the record to identify potential genuine disputes of materials fact and inferences therefrom about which jurors could reasonably disagree, the district court took it upon itself to make those decisions for the jury. *See infra* Argument I.A.3. But that's just a bench trial on the papers masquerading as a summary judgment ruling. And in the employment context (not to mention every other context), both the Supreme Court and this Court have routinely corrected such misuses of the summary judgment apparatus.[6]

---

[6] For instance, this Court has routinely reversed Title VII summary judgments given genuine disputes of fact in both the discrimination and retaliation contexts. *E.g.*, *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920–27 (11th Cir. 2018); *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1270–76 (11th Cir. 2017); *Crawford v. Carroll*, 529 F.3d 961, 970–77 (11th Cir. 2008); *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 887–89 (11th Cir. 2005); *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1105–15 (11th Cir. 2001); *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 828–32 (11th Cir. 2000); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454–57 (11th Cir. 1998); *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 597–601 (11th Cir. 1994).

### 2.    MetLife misunderstands the context in which *Lewis* arose

Additionally, like the district court, although MetLife cites *Lewis*'s holding, it never discusses the context in which it arose or the dialogue between its majority and dissent about its scope. For that reason, MetLife implies that *Lewis*'s standard is far more exacting than it really is.

Properly understood, however, *Lewis* is merely a "Goldilocks" holding that rejected three extreme, unworkable alternatives in favor of a middle ground.[7] Thus, other than procedurally frontloading the comparator analysis by shifting it from the pretext stage to the *prima facie* stage, *Lewis* merely clarified rather than upended the substantive standard that courts must apply when assessing comparators.

In *Lewis*, this Court, sitting *en banc* and by a vote of 9-3, decided two issues. The first, which isn't disputed here, was procedural: whether comparators needed to be assessed at the *prima facie* or pretext stage. 918 F.3d at 1218. The second, which seems to be in dispute here, was

---

[7] *Cf. United States v. Irey*, 612 F.3d 1160, 1197 (11th Cir. 2010) (*en banc*) (rejecting interpretation of 18 U.S.C. § 3553(a)(2) as setting forth a "parsimony principle" because a "more accurate term, if one is needed, might be 'the Goldilocks principle,'" in which "the goal is to lock in a sentence that is not too short and not too long, but just right to serve the purposes of § 3553(a)").

substantive: whether the comparators needed to be the "same or similar," "nearly identical," or some other standard. *Id.*

As to the substantive question, *Lewis* fashioned a middle ground. This Court rejected its "discordant[]" prior incantations of a "same or similar" or "nearly identical" test. *Id.* The "same or similar" test was "simultaneously too strict and too lenient, and thus incoherent," whereas judicial application of the "nearly identical" test had become "too strict." *Id.* at 1224. *Lewis* also rejected the Seventh Circuit's "so-long-as-the-comparison-isn't-useless test," *id.* at 1218, because that was "too lenient," *id.* at 1226. Thus, instead of limiting itself to those three unpalatable options, *Lewis* ordered off menu and chose a middle ground. *See id.* at 1226 n.10. Specifically, it held the proffered comparators must be "similarly situated in all material respects," *id.* at 1226.

But given the generally phrased rule it propounded, *Lewis* didn't— and couldn't—explain precisely what that meant. *Id.* at 1227. Rather, *Lewis* candidly recognized that "precisely what sort of similarity the in 'all material respects' standard entails will have to be worked out on a case-by-case basis, in the context of individual circumstances." *Id.* Still, *Lewis* identified some helpful "guideposts." *Id.*

9

On one hand, *Lewis* rejected the notions that a plaintiff would have to prove her comparators were "identical save for their race or gender," shared "purely formal similarities" like titles, or had no "minor differences in job function." *Id.* On the other hand, *Lewis* held proper comparators would typically have certain similarities: they'd have "engaged in the same basic conduct (or misconduct)"; they'd have been "subject to the same employment policy, guideline, or rule"; they'd have been "under the jurisdiction of the same supervisor"; and they'd have "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

In sum, "a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Id.* at 1228. Put otherwise, a plaintiff and her comparators "must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* (citation omitted).

Applying that newly clarified standard, *Lewis* held the plaintiff's comparators weren't similarly situated in all material respects because she and her comparators "were placed on leave years apart and pursuant to altogether different personnel policies and, perhaps even more importantly, for altogether different conditions." *Id.* at 1230. Thus, that plaintiff's Title VII case failed at the *prima facie* stage. *Id.* at 1231.

In response, the dissent made two overarching points. First, it asserted that the procedural shift of the comparator analysis from the pretext stage to the *prima facie* stage was inconsistent with prior precedent. *Id.* at 1231–32 (Rosenbaum, Martin, and Jill Pryor, JJ., concurring and dissenting). Second, it expressed concern that *Lewis*'s new substantive test could elevate immaterial differences into material concerns: "We will almost always be able to find a difference between a plaintiff and her proposed comparators if we strain our eyes looking hard enough." *Id.* at 1232. The majority, however, disavowed precisely that concern:

> Naturally, we must resist the dissent's colorful characterization of our opinion as "drop[ping] an anvil on the employer's side of the balance," and thereby "shrink[ing] the number of potentially discriminated-against plaintiffs who will have an opportunity to see trial"—particularly given that we are rejecting as too strict the "nearly identical" standard that has pervaded our case law for decades.

*Id.* at 1226 n.10 (citation omitted).

At any rate, unlike the plaintiff in *Lewis*, Lukie's comparators easily satisfy *Lewis*'s "similarly situated in all material respects" test. It's not only that Lukie and her comparators held the same title and reported to the same supervisor at certain times. *See* Doc. 32.14 at ¶¶ 14–17. In addition, Lukie and her comparators engaged in the same basic conduct,

shared similar employment histories, managed the same average number of employees, and had the same overall responsibilities for day-to-day functions. *See id.* In other words, as Lukie put it, the "only difference" between Lukie and her comparators "was the name of the 'department' we oversaw and the fact that I was a female." *Id.* ¶ 14.

### 3.    MetLife misdescribes Lukie's disparate-pay argument and overlooks her supporting evidence

Aside from misconceiving the summary judgment rubric and misunderstanding the scope of *Lewis*'s holding, MetLife (like the district court) misdescribes Lukie's disparate pay argument and overlooks much of her supporting evidence.[8]

Her argument about comparators isn't just limited to her sharing corporate titles and reporting to the same supervisor, as MetLife

---

[8] Even though this Court requires that "every assertion regarding matter in the record shall be supported by a reference to the record," 11th Cir. R. 28-1(i), MetLife's brief omits many record citations. For example, it asserts without citation that Lukie was "nearly always the most junior person at critically important meetings." MetLife Br. 5. Similarly, it asserts without citation that Cassandra and Cox "assumed" Lukie "wanted to move to live as far away as possible from her boyfriend." *Id.* at 6. Lukie can't find the record support for those assertions, among others. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("appellate judges 'are not like pigs, hunting for truffles buried in briefs'" (citation omitted)).

mistakenly contends. *See* MetLife Br. 24–25. Rather, Cassandra himself told Lukie that, despite her being his "single top performer" (Doc. 31.5 at 15), her pay wasn't "up to par" or "in line" with that of her "peers" (Doc. 32.8 at 26:21–25), all of whom were male. Similarly, Orr also agreed that he and Lukie were "peers" who were responsible for different risk functions. Doc. 32.11 at 23:5–6. And MetLife's argument also doesn't address how Lukie and her comparators managed the same number of subordinates and had similar daily responsibilities. *See* Doc. 32.14 at ¶ 14.

More fundamentally, MetLife describes Lukie's legal argument far too narrowly. She isn't arguing that her salary and bonus had to be *identical* to that of any of her comparators. That would be a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1), which Lukie hasn't pressed. *See Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526–27 (11th Cir. 1992) (describing differences between Equal Pay Act and Title VII). Instead, Lukie's disparate pay claim under Title VII is that, even considering any immaterial differences with her comparators, her compensation still wasn't in line with that of her male peers. As it happens, that's *exactly* what her supervisor, Cassandra, had expressly admitted to her. Doc. 32.8 at 26:21–25.

And that's why MetLife's offhand remark that Title VII blesses employers to discriminate willy-nilly so long as a plaintiff can't identify any "unicorn" or "doppelganger" comparators, *Lewis*, 918 F.3d at 1225 (in "the real world" and "real workplaces," "'doppelgangers are like unicorns'—they don't exist" (citation omitted)), is so surprising. *See* MetLife Br. 24 n.9 (distinguishing *Miranda*, 975 F.2d at 1531). As *Miranda* recognized, 975 F.2d at 1527–28, MetLife's suggested interpretation is exactly what the Supreme Court had rejected in *County of Washington v. Gunther*, 452 U.S. 161, 179 (1981).

### 4. Lukie's affidavit wasn't conclusory or a sham

For starters, MetLife's cryptic assertion that Lukie's affidavit was either conclusory or a sham—presented in a footnote with virtually no explanation—isn't a cognizable appellate argument in this Court. *See, e.g.*, *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 812 (11th Cir. 2015) ("fleeting footnote" was "insufficient to properly assert a claim on appeal" (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))); *Tallahassee Mem'l Reg'l Med. Center v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("single footnote" didn't "sufficiently preserve the mootness issue").

14

Even if it were cognizable, it still isn't meritorious. The sham affidavit doctrine "is applied 'sparingly because of the harsh effect [it] may have on a party's case.'" *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth*, 833 F.2d 1525, 1530 (11th Cir. 1987)). That's because "'to allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses.'" *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986)). As such, "'our cases require the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit.'" *Id.* (quoting *Tippens*, 805 F.2d at 954).

Other than noting quibbles that could easily be explored during cross-examination, MetLife identifies no "inherent inconsistency" between Lukie's deposition and her affidavit. Instead, her affidavit merely clarifies her deposition testimony. Thus, it can't be excluded as a sham.

And it isn't conclusory, as the district court mistakenly ruled. Doc. 40 at 7. Rather, it explains in great detail the similarities between Lukie and her comparators. *See* Doc. 32.14 at ¶¶ 14–17.

15

5. **The pretext issue should either be remanded to the district court to assess in the first instance, or Lukie has demonstrated factual disputes about it**

As an alternative basis for affirmance, MetLife argues Lukie didn't establish a genuine dispute of material fact regarding pretext. MetLife Br. 25–26. Lukie disagrees: given her extensive circumstantial evidence, a reasonable jury could find pretext. *See* Lukie Br. 34–42. But the issue should be remanded to the district court to assess in the first instance.

When a district court doesn't address an issue, "the proper course of action often is to vacate the order [and] remand." *In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1303 (11th Cir. 2007). "Remand after reversal of summary judgment does not seriously impair judicial economy, because, unlike remand after a full trial, it does not involve the district court in redundant proceedings." *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 990 (11th Cir. 1982). In contrast, absent the "benefit of the district court's reasoning," this Court would necessarily "commence [such] analysis on appeal at a 'decided disadvantage,'" much akin to the "'proverbial blind hog, scrambling through the record in search of an acorn.'" *Hulsey v. Pride Restaurants, LLC,* 367 F.3d 1238, 1243–44 (11th Cir. 2004).

16

**B.    With respect to sexist division of labor, MetLife's repeated assignments of feminized secretarial and administrative tasks to Lukie, unlike her male colleagues, were materially adverse employment actions**

Defending its sexist division of labor, MetLife advances two primary arguments.[9] *See* MetLife Br. 26–31. First, it argues, as a matter of law, that when an employer assigns women (but not men) to perform administrative work, that's merely an ordinary workplace tribulation that doesn't qualify as an adverse employment action. MetLife Br. 26–28. That's because, according to MetLife, such degrading assignments can't ever qualify as "materially" adverse unless they actually affect an employee's pay, title, or other benefits, opportunities, or terms or conditions of employment. *Id.* Second, MetLife argues, as a matter of fact, that Lukie's evidence wasn't sufficient. *Id.* at 28–31. Wrong on both counts.

In this Court, MetLife's first argument has been wrong for over two decades. *E.g.*, *Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 829–30 (11th Cir. 2000) ("a transfer to a different position can be 'adverse' if it involves a reduction in pay, *prestige* or *responsibility*" (emphases added)); *accord Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239

---

[9] Again, MetLife abandoned any response to Lukie's convincing mosaic argument. *See supra* note 3.

(11th Cir. 2001) ("in unusual instances," a "change in work assignments" could be "so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment"). And it continues to be wrong to this day. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (failure to transfer plaintiff to information technology job constituted adverse employment action where it carried additional prestige).

In that vein, MetLife also argues that *Smith v. Fletcher*, 559 F.2d 1014, 1017–18 (5th Cir. 1977) (female NASA pilot with master's degree in physiology suffered sex discrimination when she was increasingly assigned menial secretarial tasks like answering phones, typing, and filing),[10] and *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1561 (11th Cir. 1986) ("What is small in principal is often large in principle."), are no longer good law after the Supreme Court decided *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). It's a question for philosophers to decide whether MetLife could be more wrong.[11] But either way, the

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down as of September 30, 1981.

[11] See *The Big Bang Theory: The Status Quo Combustion* (CBS television broadcast May 15, 2014) (Stuart: "Ooh Sheldon, I'm afraid you couldn't be more wrong." Sheldon: "More wrong?! Wrong is an absolute state and not subject to gradation." Stuart: "Of course it is. It's a little

argument it's now advancing is *precisely* the same one the Supreme Court rejected so soundly in *White*.[12]

There, the employer argued reassignment of duties couldn't ever qualify as a discriminatory or materially adverse employment action. *Id.* at 67–71. Alas, the Supreme Court rejected that argument: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (punctuation and citation omitted).

To be sure, the Supreme Court adopted a test that was objective, not subjective. *Id.* at 68–69. And it was phrased "in general terms because

---

wrong to say a tomato is a vegetable; it's very wrong to say it's a suspension bridge."), *at* https://youtu.be/F_1zoX5Ax9U (visited Jan. 13, 2023).

[12] Lukie's counsel might understand better than most how *White* confirmed the holdings of cases like *Smith* and *Cox*. That's because he was the junior associate who prepared initial drafts of Carter Phillips's successful certiorari petition and unsuccessful merits briefs in *White*. *See* Cert. Pet., *Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-259 (S. Ct.) (filed Aug. 24, 2005*), at* https://tinyurl.com/yy8f69dp (visited Jan. 13, 2023); Pet'r Br., *Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-259 (S. Ct.) (filed Jan. 26, 2006), at https://tinyurl.com/j9sykmn2 (visited Jan. 13, 2023). *White* was a loss for employers, not a win, and it confirmed this Court's precedent. *See, e.g.*, *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (discussing circuit split taken up by *White* and anticipating *White*'s rejection of the "ultimate employment action" test that MetLife now advances).

the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. That's because "[c]ontext matters." *Id.* Thus, depending on the context, materially adverse employment actions could include things so simple as "a schedule change" or a "supervisor's refusal to invite an employee to lunch." *Id.*

*White* further rejected the notion that reassignment couldn't ever be discriminatory: "Almost every job category involves some responsibilities and duties that are less desirable than others." *Id.* at 70. It recognized that "reassignment of job duties is not automatically actionable." *Id.* at 71. But "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (punctuation omitted).

Affirming the employee's verdict, *White* held the issues regarding discrimination and materially adverse employment actions were jury questions: "a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." *Id.* (noting reassignment to track labor duties were "more

20

arduous and dirtier," whereas forklift operations "required more qualifi-cations" and held more "prestige").

In sum, whether an employment action is materially adverse is as-sessed objectively and contextually from an employee's perspective, not an employer's perspective, and it doesn't depend solely on hits to an em-ployee's pocketbook, *see id.* at 68–70, as MetLife incorrectly argues. Thus, MetLife's contrary *legal* argument—that employers can order female sen-ior executives to act as secretaries for their male bosses, peers, and other colleagues to whom they don't report without committing any adverse employment action, so long as their pay and title remains the same, be-cause such orders somehow aren't material—is unsound.[13]

And MetLife's *factual* argument fares no better. Making points befit for closing argument to a jury, MetLife argues Lukie's "self-serving" de-scription of her administrative work was "contrary to the record

---

[13] Indeed, MetLife's backwards argument brings to mind the com-mon social and sartorial pitfalls that female professionals must navigate: be smart, but not bossy; be assertive, but not shrill; be charming, but not flirty; be pretty, but not provocative. *See, e.g.*, Lara Bazelon, *What It Takes to Be a Trial Lawyer if You're Not a Man*, THE ATLANTIC, Sept. 2018 (describing how female litigators routinely endure sexism and bias), *at* https://tinyurl.com/2vz5rskz (visited Jan. 13, 2023). What a nightmare.

21

evidence." MetLife Br. 28. Then, MetLife pivots to nitpicking each aspect of Lukie's testimony. *Id.* at 28–31.

This kind of nitpicking isn't how summary judgment works. Rather, MetLife's argument sounds like the outline of some future cross-examination to undermine Lukie's factual narrative. But there's generally only one situation when courts can *reject* a litigant's factual narrative at summary judgment: when it's "blatantly contradicted" by the record. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (indisputable video "blatantly contradicted" plaintiff's oral version of events). *Scott*, however, was a "situation specific" anomaly, *id.* at 386 (Ginsburg, J., concurring), which is why it "did not tinker with the summary judgment standard," *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013). And this isn't anywhere close to a *Scott* situation,[14] so MetLife should go tell its factual story to a jury.[15]

---

[14] "*Scott* does not hold that courts should reject a plaintiff's account … whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events." *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (emphasis in original); *accord Gant v. Hartman*, 924 F.3d 445, 450 (7th Cir. 2019).

[15] MetLife misplaces reliance on *Cooper v. S. Co.*, 390 F.3d 695, 745 (11th Cir. 2004). That plaintiff didn't establish her proposed comparators "had similar levels of experience or education" or described their "job responsibilities with *any* particularity." *Id.* (emphasis added). Instead, she described them in a "wholly conclusory manner, based on her own subjective belief." *Id.* That's not what Lukie did. *See* Doc. 32.14 at ¶¶ 14–17.

## II.    The district court erred when it rejected Lukie's retaliation claim (count three)

Again using language that suggested it was *weighing* the evidence instead of merely *assessing* it for genuine disputes of material fact, the district court granted summary judgment against Lukie's retaliation claim for two reasons. Doc. 40 at 12–16. First, the district court ruled she supposedly couldn't prove a causal connection between her protected activity and the adverse employment action. *Id.* at 13–14. Second, as backstops to this retaliation ruling, the district court also ruled MetLife advanced legitimate, nondiscriminatory reasons that weren't pretextual and didn't constructively discharge Lukie. *Id.* at 14–16.

In her appellant's brief, Lukie explained how those rulings were incorrect. *Id.* at 52–64. Specifically, the retaliation rulings overlooked genuine dispute of material fact whether MetLife stripped her of her MIM duties and gave them to a male because she had complained about the sexist division of labor and misdescribed the record whether any complaint closely preceded Cox's stripping of Lukie's MIM duties. *Id.*

As before, MetLife disagrees. *See* MetLife Br. 31–45. In defense of the judgment, it advances three arguments. First, addressing issues the district court didn't reach as alternative grounds for affirmance, MetLife

23

argues Lukie didn't engage in protected activity or suffer a materially adverse employment action. *Id.* at 31–34. Second, MetLife defends the district court's ruling that there was no evidence of causation. *Id.* at 34–37. Third, MetLife argues Lukie didn't establish pretext (*id.* at 37–42) or constructive discharge (*id.* at 42–45). Each argument is mistaken.

### A.  Alternative bases for affirmance regarding Lukie's protected activities and MetLife's materially adverse employment actions should either be remanded to the district court or rejected altogether

For starters, because the district court assumed Lukie engaged in protected activities and that MetLife committed materially adverse employment actions (Doc. 40 at 12–13), the Court should remand those issues for the district court to address in the first instance. *See supra* Argument I.A.5. But even if they're addressed here, they should be rejected.

MetLife's initial argument that Lukie didn't engage in protected activity is inscrutable. MetLife Br. 31–32 & n.15. Citing an unpublished district court order, MetLife apparently contends that plaintiffs aren't engaging in protected activity unless they use the word "sexism" while complaining to their company. But that's not how the statute is written.

It says it's "an unlawful employment practice for an employer" to "discriminate against any person because that person has opposed any

practice *which is an unlawful employment practice under this section*." Fla. Stat. § 760.10(7) (emphasis added). There's therefore no textual basis for adding any judicial gloss that the employee's complaint about an employer's "practice" informed the employer, either with particularity or incanting certain magic words, that the *basis* for the complaint was the practice's discriminatory nature. Rather, the text merely refers to forbidding retaliation for opposing "any practice which is an unlawful employment practice under this section." *Id.* Whether labeled or not, sexual discrimination is unlawful. So Lukie's complaints were protected activity.

MetLife's next argument that no jury could find on this record that it committed a materially adverse employment action doesn't comport with binding precedent or the record. *See supra* Argument I.B. MetLife apparently believes Lukie's MIM responsibilities were insignificant, both in prestige and the time it took. So what. Reasonable jurors could disagree on this record. Perhaps an analogy might put a finer point on this:

Suppose a female senior associate or junior partner, with superlative credentials and reviews, spent 80% of her time on complex civil litigation (which was very lucrative but not that prestigious) and 20% of her time in her firm's Supreme Court practice (which was less lucrative but

25

extraordinarily prestigious). Then, suppose she complained that her firm kept distributing document review assignments always to her instead of her male colleagues. Could reasonable jurors disagree whether her employer committed a materially adverse employment action by reassigning her prestigious Supreme Court work to a male who lacked her credentials and giving her even more document review than before?

Obviously, the answer is yes. It doesn't matter whether the law firm cares more about its bottom line than its prestige. *The law firm's perspective doesn't matter.* Rather, it's the perspective of a reasonable employee that matters. Thus, "on this record, a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." *White*, 548 U.S. at 71.

## B.    There were genuine disputes of material fact regarding causation

Addressing causation and temporal proximity, MetLife asserts Lukie's brief conceded her protected activity needed to occur no more than a month before MetLife's retaliation.[16] MetLife Br. 35. That's

---

[16] In a footnote, MetLife argues Lukie can't establish causation because some of her administrative assignments preceded her complaints about how they involved a sexist division of labor. MetLife Br. 32 n.16. Well, of course they did. *That was her complaint.* And time, as people

wishful thinking, and it misstates this Court's precedent. As Lukie explained, one way to demonstrate causation is temporal proximity. Lukie Br. 56–58. When the evidence is limited *solely* to temporal proximity, the events must be quite close in time. *Id.* But when, as here, the evidence is temporal proximity *plus* other circumstances, the events need not be as proximate to one another. *Id.*

In the same way the district court did, MetLife also overlooks reasonable inferences to be drawn from the record. MetLife Br. 35–36. Those other circumstances include the ongoing nature of Lukie's continual complaints, her "exceeds expectations" work evaluation at the end of 2016 in contrast to Orr's "meets expectations" evaluation in 2016 before transferring MIM to him. Docs. 31.5 at 21; 32.11 at 23:18-20. Also, Cox had agreed to Lukie's transfer to Tampa and the inevitable long-distance oversight of Liu before she began reporting to him and, consequently, before she complained to him about being asked to serve in a secretarial capacity. Doc. 31.5 at 21.

---

typically experience it, is linear. Thus, she obviously couldn't complain *about* MetLife's sexist division of labor *before* there was a sexist division of labor. Moreover, MetLife misses the point in a different way: according to Lukie, her administrative assignments *increased* after she complained about it. *See* Doc. 32 at 8. *That increase is part of the retaliation.*

27

**C.    There were genuine disputes of material fact regarding pretext and constructive discharge**

Finally, MetLife defends the judgment by arguing there were no genuine disputes of material fact regarding pretext or constructive discharge. *Id.* 37–42 (pretext), 42–45 (constructive discharge). Lukie's brief already discussed the contradictory evidence regarding these two issues exhaustively. *See* Lukie Br. 58–63 (pretext), 63–64 (constructive discharge). Nothing more needs to be said. And yet again, MetLife didn't respond to Lukie's convincing mosaic argument. *See supra* notes 3 & 9.

## CONCLUSION

The Court should reverse the entry of summary judgment on counts one and three, vacate the judgment, and remand for further proceedings.

Respectfully submitted,

/s/ Thomas Burns

| | |
|---|---|
| Kathryn C. Hopkinson | Thomas A. Burns |
| CURRAN ANTONELLI LLP. | Shannon C. Reese |
| 400 North Tampa Street, 15th floor | BURNS, P.A. |
| Tampa, FL 33602 | 301 West Platt Street, Suite 137 |
| (508) 274-9169 | Tampa, FL 33606 |
| khopkinson@curranantonelli.com | (813) 642-6350 |
| | tburns@burnslawpa.com |
| *Trial counsel for MaryBeth Lukie* | sreese@burnslawpa.com |
| | |
| | *Appellate counsel for MaryBeth Lukie* |

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B)'s type-volume requirement. As determined by Microsoft Word 2010's word-count function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Circuit Rule 32-4, this brief contains 6,313 words.

2.    This brief further complies with Federal Rule of Appellate Procedure 32(a)(5)'s typeface requirements and with Federal Rule of Appellate Procedure 32(a)(6)'s type-style requirements. Its text has been prepared in a proportionally spaced serif typeface in roman style using Microsoft Word 2010's 14-point Century Schoolbook font.

January 13, 2023                              /s/ Thomas Burns
                                              Thomas A. Burns

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I filed the original and three copies of the foregoing brief with the Clerk of Court via CM/ECF and regular mail on this 13th day of January, 2023, to:

> David J. Smith, Clerk of Court
> U.S. COURT OF APPEALS FOR THE
>     ELEVENTH CIRCUIT
> 56 Forsyth Street N.W.
> Atlanta, GA 30303

I FURTHER CERTIFY that I served a true and correct copy of the foregoing brief via CM/ECF on this 13th day of January, 2023, to:

> **<u>MetLife Group, Inc.</u>**
> Christopher A. Parlo
> Joseph Magrisso

January 13, 2023                     /s/ Thomas Burns
                                     Thomas A. Burns